Affirmed and Memorandum Opinion filed March 27, 2008








Affirmed and Memorandum Opinion filed March 27, 2008.

 

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-06-00827-CR

_______________

 

WILLIE ANN BURTON, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

                                                                                                                                               


On Appeal from the 182nd District Court

Harris County, Texas

Trial Court Cause No. 1045025

                                                                                                                                               


 

M E M O R A N D U M   O P I N I O N

A jury
convicted appellant Willie Ann Burton of manslaughter, and the trial court
sentenced her to twenty years confinement in the Texas Department of Criminal
Justice, Institutional Division.  In three issues, appellant contends that the
trial court committed harmful error by overruling her objection to the
inclusion of the lesser offense of manslaughter in the jury charge and by
denying her Batson challenge to the jury.  We affirm.








I.  Factual and Procedural Background

In the late evening and early morning
of January 3rd and 4th, 2005, appellant was working at her brother=s bar in the Northeast Houston area
on Cavalcade Street.  The decedent, Jaquana Singleton, and several of her
family members came into the bar while they were celebrating her step-father=s birthday.  Before the last call for
alcohol at midnight on January 3, the decedent and her family noticed that her
mother=s purse was missing.  During the
family=s search for the purse, the decedent
and appellant began cursing at each other and calling each other names.  The
decedent=s mother went outside the bar to
check the trash for her purse; the decedent and at least two others, including
her sister, remained inside the bar. 

At this point, the stories of the
witnesses diverge.  According to the decedent=s family and friends who testified at
appellant=s trial, the decedent was near the door of the bar, in the process of
leaving with her family (although she continued to engage appellant verbally). 
According to appellant and the witnesses for her defense, the decedent ran at
appellant with  her fist raised in a threatening manner.  Regardless of the truth
of the parties= stories, the witnesses agree about what happened next: appellant shot
the decedent, hitting her in the chest.  The decedent died at the scene,
apparently quite quickly after being shot; the record does not reflect that any
attempts were made to resuscitate her by any of the witnesses or by paramedics
or other emergency personnel.[1]  Several
officers arrived at the scene and began investigating the incident.  Appellant
never fled the scene or otherwise attempted to deny that she shot the
decedent.  She spoke with an investigator at the scene and admitted shooting
the decedent, claiming that she did so in self-defense.  Appellant was arrested
and later indicted for murder.








During her trial, appellant relied on
a theory of self-defense.  On direct examination, she testified to the events
leading up to the shooting as follows, A[The decedent] was coming toward me
like she was going to do me some bodily harm or hurt me or kill me.@  Appellant described the shooting in
some detail, repeatedly indicating she didn=t aim the gun:

That=s when she come
at me, and I had the pistol in my back pocket.  When she got close, I just
pulled it and I didn=t aim it.  I just shot it.

. . .

I didn=t have any time
to aim the gun.  She was right up on me.

. . .

I just
pulled [the gun] out and shot it.  I didn=t
aim.

When questioned about her purpose in
shooting at appellant, she indicated she was just Atrying to scare her@ and that she was in fear of death or
serious bodily injury from the decedent.  Finally, she testified that shooting
the gun was immediately necessary to protect herself from the attack to keep
her from being seriously injured or killed.

On cross-examination, appellant
reiterated that she did not aim the gun:

The State:       And when [the decedent], according to
you, attacked you, you pointed the gun at her, right?

Appellant:       I pulled the gun out and pulled the
trigger, sir.  I didn=t point it.  I didn=t
have time to point it.

The State:       You didn=t point it at her?

Appellant:       I pulled the trigger B the gun out of my back pocket and shot it.

The State:       Where were you aiming?

Appellant:       I just shot it.

The State:       You just shot it?

Appellant:       When it B come up and I just shot it.  I wasn=t aiming at anything.

When pressed, she again stated that
she was just Atrying to scare@ the decedent and she A[j]ust pulled [the gun] out and just
fired.@  In response to questioning by the
State regarding what she thought would happen to the person at whom she shot
the gun, appellant stated, AI didn=t have no thoughts about it because I was really trying to
scare [the decedent] away from me.  I wasn=t trying to shoot her.@  But appellant admitted that
shooting a gun at someone is an act clearly dangerous to human life.  The
following exchange occurred after this admission:








The State:       My question to you, ma=am, is: You knew that shooting a gun in the direction
of somebody could cause their death, didn=t
you?

Appellant:       Yes, if I strike it. [sic]

The State:       But you=re claiming that you were just trying to scare her.

Appellant:       That=s all I was trying to do, sir.

The State:       You=re saying you were trying to, like, warn her or get her to stop running
at you?

Appellant:       I didn=t know.

. . .

The State:       Do you remember telling [the officer
who took your statement at the scene] when he asked you whether you pulled the
gun to warn her, ANo you didn=t@?

Appellant:       I didn=t B I pulled out the gun and shot, sir.  I didn=t know what to do.  I was not trying to shoot her.  I
was trying to scare her off.

Finally, when the State questioned
appellant regarding what she told her brother immediately after the shooting,
she replied, AI=m sorry, brother.  I just shot her. 
I didn=t know what she was going to do to
me.@

After both sides rested and closed,
the trial court held a charge conference outside the presence of the jury. 
Appellant=s counsel objected to the inclusion of manslaughter in the charge,
stating:

Defense=s position, one, your Honor, it=s not raised by the evidence; and, two, that it=s in conflict with the other part of the charge, the
murder itself in self-defense.  It=s
conflicting charges that will only confuse the jurors.  And for those reasons,
your Honor, we object to the manslaughter portion of the charge being included.

Over defense counsel=s objection, the trial court included
the definition of manslaughter in the charge.  The jury convicted appellant of
manslaughter, and the trial court sentenced her to twenty years confinement. 
This appeal timely followed.

II.  Issues Presented








In her
first issue, appellant contends the trial court committed reversible error by
submitting a charge on manslaughter.  In her second and third issues, appellant
asserts she was denied her United States constitutional right to equal
protection because the State used two of its seven peremptory challenges in a
racially discriminatory manner.

III.  Analysis

A.        Lesser-Included Offense
Charge

In reviewing a claim of charge error,
we must first determine whether error exists.  Druery v. State, 225
S.W.3d 491, 504 (Tex. Crim. App. 2007).  If we conclude that there is error in
the charge, we then determine whether the error caused sufficient harm to
require reversal.  Id.  Where, as here, error has been properly
preserved by an objection to the charge, we will reverse so long as the error
is not harmless.  Id.  Under this standard, we must reverse if there is
any harm, regardless of the degree of harm.  Id.

A charge on a lesser-included offense
is warranted when (1) the offense is actually a lesser-included offense of the
offense charged, and (2) there is some evidence in the record that would permit
a rational jury to find the defendant guilty only of the lesser offense.  McKinney
v. State, 207 S.W.3d 366, 370(Tex. Crim. App. 2006); Arnold v.
State, 234 S.W.3d 664, 670B71 (Tex. App.CHouston [14th Dist.] 2007, no pet.).  Neither party disputes
that manslaughter is a lesser-included offense of murder.  The only difference
between the two offenses is the mental state required.  Arnold, 234
S.W.3d at 671.  Murder requires knowing or intentional conduct, which means
either (a) a conscious desire to engage in the conduct causing the result, or
(b) an awareness that the conduct is reasonably certain to cause the result.  See
id.; see also Tex. Penal Code
Ann. '' 19.02(b)(1), 6.03(a)B(b) (Vernon 2003).  








In contrast, manslaughter is defined
as recklessly causing the death of an individual, which means being aware of
but consciously disregarding a substantial and unjustifiable risk that the
result of the conduct will occur.  See Arnold, 234 S.W.3d at 671; Tex. Penal Code Ann. '' 19.04(a), 6.03(c).  Thus, the second
prong of the test for inclusion of the lesser-included instruction is satisfied
if there is some evidence from which a rational juror could find that appellant
consciously disregarded the substantial and unjustifiable risk that her conduct
would cause the decedent=s death, rather than finding (1) it was appellant=s conscious objective or desire to
cause the decedent=s death, or (2) appellant was aware that her conduct was
reasonably certain to cause the decedent=s death.  Anything more than a
scintilla of evidence is sufficient to entitle a party to a charge on a
lesser-included offense.  Ferrel v. State, 55 S.W.3d 586, 589 (Tex.
Crim. App. 2001).  

Appellant asserts that her claim of
self-defense precluded the trial court from submitting the manslaughter
instruction because one cannot accidentally or recklessly act in self-defense. 
See, e.g., Martinez v. State, 16 S.W.3d 845, 848 (Tex.
App.CHouston [1st Dist.] 2000, pet. ref=d); Avila v. State, 954 S.W.2d
830, 843 (Tex. App.CEl Paso 1997, pet. ref=d); Johnson v. State, 915
S.W.2d 653, 659 (Tex. App.CHouston [14th Dist.]1996, pet. ref=d).  But if some evidence appears in
the record supporting the submission of both self-defense and manslaughter, the
trial court may submit both issues to the jury.  O=Brien v. State, 89 S.W.3d 753, 755B56 (Tex. App.CHouston [1st Dist.] 2002, pet. ref=d); see also Jones v. State,
984 S.W.2d 254, 257 (Tex. Crim. App. 1998) (en banc) (stating that if there is
evidence that raises a lesser-included offense, an instruction on the lesser
offense should be given even if the evidence does not fit in with the larger
theme of the defendant=s testimony); Ford v. State, 38 S.W.3d 836, 840 (Tex.
App.CHouston [14th Dist.] 2001, pet. ref=d) (A[T]he trial court is authorized to sua
sponte include a charge on a lesser offense; a trial court is not
restricted to submitting lesser included offenses only when the defendant has
properly requested them.@).








In this case, appellant admitted she
shot the gun intentionally.  But she also asserted that she did not intend to
shoot the decedent and was instead trying to warn her off or scare her.  She
further stated that she did not aim the gun and just Ashot it.@  She agreed that shooting a gun in a
person=s direction is a dangerous act that
could cause that person=s death, but qualified her response by stating such an act
would cause death only if she hit the person at whom she had shot.  Based on
this evidence, a rational juror could have concluded that appellant consciously
disregarded the substantial and unjustifiable risk that her conduct would cause
the decedent=s death.  See Arnold, 234 S.W.3d at 671 (noting that courts
typically conclude Aa manslaughter instruction [is] required based on some
evidence that the gun discharged accidentally or that the defendant only
intended to frighten the complainant@); see also O=Brien, 89 S.W.3d at 756 (determining that,
because there was some evidence that the accused acted recklessly, he was
entitled to a manslaughter charge).  Thus, the trial court did not err by
charging the jury on the lesser-included offense of manslaughter.  We overrule
appellant=s first issue.

B.        The
State=s Peremptory Challenges

An accused has a right to a trial by
a jury whose members are selected in a racially‑neutral,
nondiscriminatory manner.  Batson v. Kentucky, 476 U.S. 79, 85B86, 106 S.Ct. 1712, 1717 (1986); Tex. Code Crim. Proc. Ann. art. 35.261
(Vernon 2006) (codifying the Batson standard).  We review a trial court=s ruling on a Batson challenge
in the light most favorable to the ruling, giving deference to the trial court=s assessment of credibility and
demeanor.  Williams v. State, 804 S.W.2d 95, 101 (Tex. Crim. App. 1991)
(en banc).

A Batson challenge generally
gives rise to a three‑step process.  First, the defendant must make a
prima facie case that a veniremember was peremptorily excluded on the basis of
race.  Jasper v. State, 61 S.W.3d 413, 421 (Tex. Crim. App. 2001).  Next,
the prosecution must come forward with race‑neutral reasons for the
peremptory strike.  Simpson v. State, 119 S.W.3d 262, 268 (Tex. Crim.
App. 2003).  The defendant then has the opportunity to rebut the State=s explanations.  Id.  The
burden of persuasion remains with the defendant to prove purposeful
discrimination and that the State=s race‑neutral explanations
were pretextual.  Johnson v. State, 68 S.W.3d 644, 649 (Tex. Crim. App.
2002).  If the State offers a race‑neutral explanation before any inquiry
on the prima facie case, the issue of a prima facie case is moot.  Id.








A trial court=s decision on whether the opponent
has proved a Batson claim turns, in part, on observations made during
the voir dire examination.  Young v. State, 826 S.W.2d 141, 145 (Tex.
Crim. App. 1991) (en banc).  The court=s determination of a Batson
issue must be accorded great deference on appeal.  Chambers v. State,
866 S.W.2d 9, 23 (Tex. Crim. App. 1993) (en banc).  The United States Supreme
Court explained that unless a discriminatory intent is inherent in the
prosecutor=s explanation, the reason offered will be deemed race‑neutral. Purkett
v. Elem, 514 U.S. 765, 768, 115 S.Ct. 1769, 1771 (1995) (per curiam); see
also Guzman v. State, 85 S.W.3d 242, 246 (Tex. Crim. App. 2002) (en banc). 
An appellate court may reverse only if it is left with the Adefinite and firm conviction that a
mistake has been committed.@  Hill v. State, 827 S.W.2d 860, 865 (Tex. Crim. App.
1992) (en banc) (quoting U.S. v. Hernandez, 887 F.2d 564, 567 (5th Cir.
1989)).

Here, appellant asserts that the
State used two out of seven strikes to eliminate African-American jurors.  The
record reflects that appellant challenged the State=s decisions to strike jurors numbered
28 and 41.  In response to appellant=s challenge to the State=s strike of juror number 28, the
State asserted the following race neutral explanation:

Juror No. 28 is the Executive Director called [sic] the Caring Safe
Place which doesn=t really give me the feeling B Number two, he showed criminal history that he had
something in >98 out of the 183rd involving a theft.  I don=t know if it was conviction and arrest, but it would
be sufficient for me.  I also B
during my conversation with [another juror], they were placing importance on
the area where the offense occurred.  He indicated that he, in fact, would care
very much about where the offense occurred; and that is why I struck Juror No.
28.

In response to appellant=s challenge to juror 41, the State explained:

Juror No. 41 is the juror who engaged in the conversation about where
the offense occurred and how important it would be to know where the offense
occurred.  She=s the one who started that topic, where the offense
occurred.  If it was in a good neighborhood or a bad one; and for that reason,
I struck her.








Appellant did not rebut
either of these race-neutral explanations or otherwise attempt to establish
that these explanations were pretextual.  See  Johnson, 68 S.W.3d
at 649.  Under these circumstances, we conclude that appellant has not
established these veniremembers were excluded on the basis of race.  We
therefore overrule appellant=s second and third issues.

IV.  Conclusion

We
conclude that the trial court did not err by instructing the jury on the
lesser-included offense of manslaughter.  We further conclude that appellant
has not established her United States constitutional right to equal protection
was violated by the State=s use of its peremptory strikes.  Therefore, we overrule
appellant=s three issues and affirm the judgment of the trial court.

/s/        Eva M. Guzman

Justice

 

 

Judgment rendered and Memorandum
Opinion filed March 27, 2008.

Panel consists of Justices Yates,
Fowler, and Guzman.

Do Not Publish C Tex.
R. App. P. 47.2(b).









[1]  The medical examiner later determined that the
decedent=s death was caused by a A[g]unshot wound of left upper extremity and torso with perforation of
heart, liver, and lung@; the bullet grazed the inside of the decedent=s upper left arm and then entered  the upper left side
of her chest and exited the lateral right side of her torso Aa little bit towards the back.@  Stippling was observed around the graze wound to the
decedent=s arm.  The direction of the shot to her chest was Aleft to right, front to back, and downward.@